## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: ) | |
| ) | |
| PROSOURCE MACHINERY, LLC, ) | Case No. 25-11010 KHT |
| ) | Chapter 11 |
| Debtor. ) | |
| ) | |
| _____ ) | |
| ) | |
| PROSOURCE MACHINERY, LLC, ) | Adversary Proceeding No. |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| CAPITAL EXPRESS INC. d/b/a ) | |
| CAPITAL EXPRESS NY, ) | |
| ) | |
| Defendant. ) | |

### COMPLAINT (A) FOR DECLARATORY AND INJUNCTIVE RELIEF AND (B) TO AVOID TRANSFER

Plaintiff ProSource Machinery, LLC, for its Complaint (A) for Declaratory and Injunctive Relief and (B) to Avoid Transfer, states and alleges as follows:

### JURISDICTION AND VENUE

1. The Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and (e) and 28 U.S.C. § 157(a).

2. This proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (F), (K) and (O).

3. Venue in this district is proper under 28 U.S.C. § 1409(a).

4. This adversary proceeding is commenced pursuant to Rule 7001(1), (2), (7) and (9) of the Federal Rules of Bankruptcy Procedure.

5. Plaintiff consents to the entry of final orders and judgment by the Bankruptcy Court.

## PARTIES

6. Plaintiff ProSource Machinery, LLC ("Debtor") is the debtor-in-possession in chapter 11 case no. 25-11010 KHT (the "Bankruptcy Case").

7. Debtor filed for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on February 28, 2025 (the "Petition Date").

8. Defendant Capital Express Inc. ("Defendant") is a creditor of the Debtor.

## GENERAL ALLEGATIONS

9. On or about July 30, 2024, Debtor and Defendant executed a Future Receivables Sale and Purchase Agreement (the "Agreement"), a copy of which is attached hereto as **Exhibit 1**.

10. At the time of the Agreement, Debtor was insolvent and undercapitalized.

11. Under the Agreement, Debtor purportedly sold, assigned, transferred, and conveyed to Defendant, 3% of Debtor's "receipts of monies for the sale of its goods and services" (the "Assignment").

12. Ostensibly, Defendant wished for the Agreement to appear like a purchase of future accounts receivable generated in the course of Debtor's operations. But apart from the purported assignment clause above, the transaction in reality had nothing to do with buying accounts receivable.

13. Rather, the purported assignment disguised an egregious, exploitative cash flow loan. The Agreement contemplated the Debtor receiving $150,000.00, less various fees and charges. In return, Debtor agreed to pay back $217,500.00 in cash through direct ACH withdrawals from a bank account, into which all of Debtor's receipts from operations were required to be deposited.

14. The Agreement required weekly payments of $9,062.50.

15. Said differently, the economic substance of Debtor's side of the bargain was not to assign receivables for Defendant to collect, but to give Defendant cash from every payment Debtor received in the ordinary course.

16. Indeed, the Agreement actually defines "Future Receipts"—i.e., the real consideration—to mean "all of [Debtor's] receipts of monies for the sale of its goods and services that monies shall be paid and delivered to [Debtor] by [Debtor's] customers and/or other vendees […]."

17. Had the Debtor's financial performance improved after entry into the Agreement, the $217,500.00 to be paid to Defendant would have been paid in full in 25 weeks—less than six months—yielding Defendant an annual interest rate of approximately 94%. This economic

2

"balance" of consideration demonstrates the absence of fair or reasonably equivalent value at the moment of transacting.

18. Nevertheless, a 94% annual return was not enough. The Agreement purports to create a fallback security interest in Defendant's favor to secure the amounts owed to it (the "Security Interest"). That security interest purportedly encompassed "all accounts, including without limitation, all deposit accounts, accounts-receivable, and other receivables, chattel paper, documents, equipment, general intangibles, instruments, and inventory […]" of the Debtor and all proceeds thereof (the "Collateral").

19. Even still, Defendant required more credit support. So, in addition to the commitments and purported pledges by Debtor, Debtor's principal, Derek Dicks, personally guaranteed the Debtor's obligations pursuant to various provisions in the Agreement (the "Dicks Guaranty").

20. In addition, the Agreement included failure to pay the weekly installment as an event of default, providing Defendant the right to accelerate amounts due and call the personal guarantee of Mr. Dicks.

21. The Agreement also purports to grant Defendant power of attorney over Debtor's accounts receivable in the event of a default.

22. The terms of the Agreement also provided that the Debtor was in default on day one of the Agreement because the Agreement required the Debtor to represent that its future receivables were unencumbered.

23. Defendant knew or should have known (through a cursory UCC search) when the Agreement was executed that the Debtor's future receivables were already encumbered.

24. By inducing the Debtor to enter the Agreement knowing that the Debtor was already in default of its terms, Defendant effectively eliminated any potential risk sharing features of the Agreement: because an event of default had occurred at execution, Defendant was immediately entitled to exercise all of the default remedies that shifted the contract risks to the Debtor and its guarantor.

25. The default remedies afforded Defendant under the Agreement gave Defendant recourse in the event of a default.

26. These economic realities and the terms of the Agreement left Defendant facing no material risk of not getting paid.

27. Defendant contends that it recorded a UCC Financing Statement against the Debtor on August 21, 2024 as contemplated under the Agreement. See **Exhibit 2**.

28. However, the UCC-1 Financing Statement was recorded in Minnesota, a state with which the Debtor has no connections.

29. The Agreement is governed by New York state law.

30. On or about February 3, 2025, Debtor received a Notice of Filing of Foreign Judgment stating that a judgment of "$309,374.86, originally entered in the Supreme Court of the State of New York, County of Monroe, has been entered" against Debtor and Mr. Dicks in Colorado.

31. The domesticated judgment further evidence of Defendant's exercise of default remedies under the Agreement that shifted all risks of non-payment to the Debtor and Mr. Dicks.

32. Other lenders recorded valid UCC-1 Financing Statements against the Debtor in Montana, a state in which (a) the Debtor transacts business, (b) has assets, and (c) is organized and registered as an LLC.

33. Such UCC-1 Financing Statements provided such lenders with first and second priority lien rights in the Debtor's pre-petition accounts receivable.

## FIRST CLAIM FOR RELIEF
### (Declaratory Relief – 28 U.S.C. § 2201)

34. Debtor incorporates by this reference the allegations contained in Paragraphs 1 through 33 above as though more fully set forth in this Claim for Relief.

35. Under Fed. R. Bankr. P. 7001(2) and (9), a party may commence an adversary proceeding to seek a declaratory judgment determining the validity, priority and extent of interests in property.

36. Courts possess jurisdiction to issue declaratory relief when there is an actual justiciable controversy. *See MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 (2007). An actual, justiciable controversy requires that "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.*

37. An actual, justiciable controversy exists between Debtor and Defendant. Debtor asserts that the Agreement, was as a matter of economic substance, a loan made by Defendant to Debtor. Defendant takes the position the Financing was a true sale of certain assets by Debtor to Defendant. The resolution of this controversy has material consequences with respect to the validity, enforceability, and priority of Defendant's claims against Debtor and its bankruptcy estate. This controversy is ripe for judicial determination.

38. The Agreement was a loan rather than a sale of future accounts because, among other reasons, (a) Defendant assumed no risks of non-collection of future accounts; (b) the Agreement was a cash-flow loan; (c) the Defendant had recourse under the Agreement; and (d) the Agreement purported to give Defendant a security interest in Debtor's accounts receivable, among other assets.

4

39. Based upon the foregoing and other evidence to be adduced at trial, Debtor seeks a declaration that the Agreement is a loan rather a sale of accounts.

40. In addition, because the effective annual interest rate of the Agreement was approximately 94%, Debtor seeks a declaration that the Agreement is usurious under New York law.

WHEREFORE, Debtor respectfully requests that the Court enter judgment in its favor and against Defendant declaring (a) the Agreement to be a loan rather than a true sale of accounts; (b) the Agreement is usurious and invalid; and (c) granting such other relief as the Court deems appropriate.

## SECOND CLAIM FOR RELIEF
**(Declaratory Relief – Validity, Priority, Extent of Lien – Fed. R. Bankr. P. 7001(2) and (9))**

41. Debtor incorporates by this reference the allegations contained in Paragraphs 1 through 40 above as though more fully set forth in this Claim for Relief.

42. Under Fed. R. Bankr. P. 7001(2) and (9), a party may commence an adversary proceeding to seek a declaratory judgment determining the validity, priority and extent of interests in property.

43. On the Petition Date the Debtor's accounts receivable were subject to the senior liens of other lenders.

44. Accordingly, at all times, the Debtor owned no unencumbered collateral to which Defendant's purported liens could attach.

45. Alternatively, by virtue of the foregoing and giving effect to Section 552 of the Bankruptcy Code, any property currently held by the estate that did not exist on or was not owned by the Debtor on the Petition Date is either unencumbered by the Security Interest or, to the extent encumbered by the Security Interest, is also encumbered by other, prior perfected liens or security interests in an amount exceeding the value of such property.

46. Thus, any collateral that existed and was owned by the Debtor on the Petition Date is encumbered by other, prior perfected liens or security interests in an amount exceeding the value of such property.

47. Taken together, these realities establish that any pledge of Collateral to Defendant was ineffective and/or any remaining Collateral pledged to Defendant is worth less than the amount of prior perfected liens or security interests other than Defendant's. Accordingly, under section 506(a) of the Bankruptcy Code, any secured claim held by Defendant should be determined to be in the amount of $0.00.

WHEREFORE, Debtor respectfully requests that the Court enter judgment in its favor and against Defendant granting the relief requested herein and such other relief as the Court deems appropriate.

### THIRD CLAIM FOR RELIEF
### (Avoidable Transfer – 11 U.S.C. § 544(a))

48. Debtor incorporates by this reference the allegations contained in Paragraphs 1 through 47 above as though more fully set forth in this Claim for Relief.

49. The grant of the security interest from the Debtor to the Defendant was a transfer within the meaning of 11 U.S.C. § 101(54)(D) (the "Transfer").

50. Under 11 U.S.C. § 544(a), the Debtor has, as of the commencement of the case, "the rights and powers of, or may avoid any transfer of property of the debtor . . . that is voidable by" (1) a judgment lien creditor and (2) an execution lien creditor.

51. On the Petition Date, the Defendant's security interest in the accounts receivable, if any, was unperfected.

52. As of the Petition Date, a judgment lien creditor and/or an execution lien creditor would have the right and power to avoid the Transfer.

53. The Transfer is therefore avoidable by the Debtor pursuant to the hypothetical strong-arm powers conferred under 11 U.S.C. § 544(a)(1) and (a)(2).

WHEREFORE, the Debtor respectfully requests that the Court enter judgment in its favor and against Defendant, avoiding, pursuant to 11 U.S.C. § 544, all transfers of lien interests to Defendant and granting such other relief as the Court deems appropriate.

### FOURTH CLAIM FOR RELIEF
### (Avoidable Transfer – 11 U.S.C. § 548(a))

54. Debtor incorporates by this reference the allegations contained in Paragraphs 1 through 53 above as though more fully set forth in this Claim for Relief.

55. Section 548(a) of the Bankruptcy Code provides:

> (1) The trustee may avoid … any obligation … incurred by the debtor, that was … incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily …
>
> (B) (i) received less than reasonably equivalent value in exchange for such … obligation; and

(ii) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured …

56. Under the Agreement, Debtor received less than $150,000.00, but incurred the obligation to repay Defendant $217,500.00—an obligation that was secured by a security interest (despite those transfers being avoidable in bankruptcy due to Defendant's negligence in filing a financing statement in the wrong state).

57. Based on Debtor's then-recent financial performance, Debtor and Defendant would have expected the $217,500.00 to be repaid in a matter of months, yielding Defendant greater than 94% annual returns.

58. The amount owed under the Agreement was incurred within the two years before the Petition Date.

59. Debtor received less than reasonably equivalent value in exchange for incurring its repayment obligation under the Agreement.

60. Debtor was insolvent on July 30, 2024 or became insolvent as a result of entering into the Agreement.

61. Debtor was, on July 30, 2024 engaged in business or a transaction, or was about to engage in business or a transaction, for which Debtor's remaining property was an unreasonably small capital.

62. On July 30, 2024, Debtor intended to incur, or believed that it would incur, debts that would be beyond Debtor's ability to pay as such debts matured.

63. Debtor's incurrence of its obligation to repay Defendant $217,500 is avoidable as a constructively fraudulent transfer under 11 U.S.C. § 548(a).

WHEREFORE, the Debtor respectfully requests that the Court enter judgment in its favor and against Defendant, avoiding, pursuant to 11 U.S.C. § 544, all transfers of lien interests to Defendant and granting such other relief as the Court deems appropriate.

Dated this 14th day of April, 2025.

          Respectfully submitted,

          WADSWORTH GARBER WARNER CONRARDY, P.C.

          */s/David J. Warner*
          David V. Wadsworth, #32066
          David J. Warner, #38708
          2580 West Main Street, Suite 200
          Littleton, Colorado 80120
          303-296-1999 / 303-296-7600 FAX
          dwadsworth@wgwc-law.com
          dwarner@wgwc-law.com
          Attorneys for the Plaintiff/Debtor