# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| PROSOURCE MACHINERY, LLC, | ) | Case No. 25-11010 KHT |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |
| PROSOURCE MACHINERY, LLC, | ) | Adversary Proceeding No. 25-01125 KHT |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CAPITAL EXPRESS INC. d/b/a | ) | |
| CAPITAL EXPRESS NY, | ) | |
| | ) | |
| Defendant. | ) | |

## VERIFIED MOTION FOR DEFAULT JUDGMENT

ProSource Machinery, LLC ("ProSource"), plaintiff herein, by and through undersigned counsel, respectfully moves this Court for entry of default and default judgment against Defendant Capital Express Inc. d/b/a Capital Express NY ("Defendant") pursuant to Fed.R.Civ.P. 55, which is incorporated by Fed.R.Bankr.P. 7055. In support of the motion, ProSource states as follows:

### Entry of Default

1. On April 14, 2025, ProSource commenced this proceeding by filing a Complaint and serving copies of the Summons and Complaint upon Defendant. Defendant failed to timely respond to the Complaint. On August 20, 2025, ProSource filed a motion seeking entry of Defendant's default. The motion is pending. ProSource now seeks entry of default judgment.

### Motion for Default Judgment

2. The Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) and (e).

3. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (F), (K), and (O).

4. Venue in this district is proper under 28 U.S.C. § 1409(a).

5. ProSource is a Montana corporation duly authorized to do business in Montana and Colorado.

6. Upon information and belief, Defendant Capital Express Inc. d/b/a Capital Express NY ("Defendant") is a merchant cash advance company from New Jersey.

7. ProSource filed for relief under chapter 11 of the Bankruptcy Code on or about February 28, 2025 (the "Petition Date").

## First Claim for Relief

8. On or about July 30, 2024, ProSource and Defendant executed a Future Receivables Sale and Purchase Agreement (the "Agreement"), a copy of which is attached to the Complaint as Exhibit 1.

9. At the time of the Agreement, ProSource was insolvent and undercapitalized.

10. Under the Agreement, ProSource purportedly sold, assigned, transferred, and conveyed to Defendant, 3% of ProSource's "receipts of monies for the sale of its goods and services" (the "Assignment").

11. Ostensibly, Defendant wished for the Agreement to appear like a purchase of future accounts receivable generated in the course of ProSource's operations. But apart from the purported Assignment, the transaction in reality had nothing to do with buying accounts receivable.

12. Rather, the purported Assignment disguised an egregious, exploitative cash flow loan. The Agreement contemplated ProSource receiving $150,000.00, less various fees and charges. In return, ProSource agreed to pay back $217,500.00 in cash through direct ACH withdrawals from a bank account, into which all of ProSource's receipts from operations were required to be deposited.

13. The Agreement required weekly payments of $9,062.50.

14. Said differently, the economic substance of ProSource's side of the bargain was not to assign receivables for Defendant to collect, but to give Defendant cash from every payment ProSource received in the ordinary course.

15. Indeed, the Agreement actually defines "Future Receipts"—i.e., the real consideration—to mean "all of [ProSource's] receipts of monies for the sale of its goods and services that monies shall be paid and delivered to [ProSource] by [ProSource's] customers and/or other vendees […]."

16. Had ProSource's financial performance improved after entry into the Agreement, the $217,500.00 to be paid to Defendant would have been paid in full in 25 weeks—less than six months—yielding Defendant an annual interest rate of approximately 94%. This economic "balance" of consideration demonstrates the absence of fair or reasonably equivalent value at the moment of transacting.

17. Nevertheless, a 94% annual return was not enough. The Agreement purports to create a fallback security interest in Defendant's favor to secure the amounts owed to it (the "Security Interest"). That security interest purportedly encompassed "all accounts, including without limitation, all deposit accounts, accounts-receivable, and other receivables, chattel paper, documents, equipment, general intangibles, instruments, and inventory […]" of ProSource and all proceeds thereof (the "Collateral").

18. Even still, Defendant required more credit support. So, in addition to the commitments and purported pledges by ProSource, ProSource's principal, Derek Dicks, personally guaranteed ProSource's obligations pursuant to various provisions in the Agreement (the "Dicks Guaranty").

19. In addition, the Agreement included failure to pay the weekly installment as an event of default, providing Defendant the right to accelerate amounts due and call the personal guarantee of Mr. Dicks.

20. The Agreement also purports to grant Defendant power of attorney over ProSource's accounts receivable in the event of a default.

21. The terms of the Agreement also provided that ProSource was in default on day one of the Agreement because the Agreement required ProSource to represent that its future receivables were unencumbered.

22. Defendant knew or should have known (through a cursory UCC search) when the Agreement was executed that ProSource's future receivables were already encumbered.

23. By inducing ProSource to enter the Agreement knowing that ProSource was already in default of its terms, Defendant effectively eliminated any potential risk sharing features of the Agreement: because an event of default had occurred at execution, Defendant was immediately entitled to exercise all of the default remedies that shifted the contract risks to ProSource and its guarantor.

24. The default remedies afforded Defendant under the Agreement gave Defendant recourse in the event of a default.

25. These economic realities and the terms of the Agreement left Defendant facing no material risk of not getting paid.

26. Defendant contends that it recorded a UCC Financing Statement against ProSource on August 21, 2024 as contemplated under the Agreement. *See* Exhibit 2 to Complaint.

27. However, the UCC-1 Financing Statement was recorded in Minnesota, a state with which ProSource has no connections.

28. The Agreement is governed by New York state law.

29. On or about February 3, 2025, ProSource received a Notice of Filing of Foreign Judgment stating that a judgment of "$309,374.86, originally entered in the Supreme Court of the State of New York, County of Monroe, has been entered" against ProSource and Mr. Dicks in Colorado.

30. The domesticated judgment further evidence of Defendant's exercise of default remedies under the Agreement that shifted all risks of non-payment to ProSource and Mr. Dicks.

31. Other lenders recorded valid UCC-1 Financing Statements against ProSource in Montana, a state in which (a) ProSource transacts business, (b) has assets, and (c) is organized and registered as an LLC.

32. Under Fed. R. Bankr. P. 7001(2) and (9), a party may commence an adversary proceeding to seek a declaratory judgment determining the validity, priority and extent of interests in property.

33. Courts possess jurisdiction to issue declaratory relief when there is an actual justiciable controversy. *See MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 (2007). An actual, justiciable controversy requires that "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.*

34. An actual, justiciable controversy exists between ProSource and Defendant. ProSource asserts that the Agreement, was as a matter of economic substance, a loan made by Defendant to ProSource. Defendant takes the position the Financing was a true sale of certain assets by ProSource to Defendant. The resolution of this controversy has material consequences with respect to the validity, enforceability, and priority of Defendant's claims against ProSource and its bankruptcy estate. This controversy is ripe for judicial determination.

35. The Agreement was a loan rather than a sale of future accounts because, among other reasons, (a) Defendant assumed no risks of non-collection of future accounts; (b) the Agreement was a cash-flow loan; (c) the Defendant had recourse under the Agreement; and (d) the Agreement purported to give Defendant a security interest in ProSource's accounts receivable, among other assets.

36. Based upon the foregoing, ProSource seeks a declaration that the Agreement is a loan rather a sale of accounts.

37. In addition, because the effective annual interest rate of the Agreement was approximately 94%, ProSource seeks a declaration that the Agreement is usurious under New York law.

## Second Claim for Relief

38. On the Petition Date ProSource's accounts receivable were subject to the senior liens of other lenders.

39. Accordingly, at all times, ProSource owned no unencumbered collateral to which Defendant's purported liens could attach.

40. Alternatively, by virtue of the foregoing and giving effect to Section 552 of the Bankruptcy Code, any property currently held by the estate that did not exist on or was not owned by ProSource on the Petition Date is either unencumbered by the Security Interest or, to the extent encumbered by the Security Interest, is also encumbered by other, prior perfected liens or security interests in an amount exceeding the value of such property.

41. Thus, any collateral that existed and was owned by ProSource on the Petition Date is encumbered by other, prior perfected liens or security interests in an amount exceeding the value of such property.

42. Taken together, these realities establish that any pledge of Collateral to Defendant was ineffective and/or any remaining Collateral pledged to Defendant is worth less than the amount of prior perfected liens or security interests other than Defendant's. Accordingly, under section 506(a) of the Bankruptcy Code, any secured claim held by Defendant should be determined to be in the amount of $0.00.

## Third Claim for Relief

43. The grant of the security interest from ProSource to the Defendant was a transfer within the meaning of 11 U.S.C. § 101(54)(D) (the "Transfer").

44. Under 11 U.S.C. § 544(a), ProSource has, as of the commencement of the case, "the rights and powers of, or may avoid any transfer of property of the debtor . . . that is voidable by" (1) a judgment lien creditor and (2) an execution lien creditor.

45. On the Petition Date, the Defendant's security interest in the accounts receivable, if any, was unperfected.

46. As of the Petition Date, a judgment lien creditor and/or an execution lien creditor would have the right and power to avoid the Transfer.

47. The Transfer is therefore avoidable by ProSource pursuant to the hypothetical strong-arm powers conferred under 11 U.S.C. § 544(a)(1) and (a)(2).

### Fourth Claim for Relief

48. Section 548(a) of the Bankruptcy Code provides:

> (1) The trustee may avoid … any obligation … incurred by the debtor, that was … incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily …
>
> (B) (i) received less than reasonably equivalent value in exchange for such … obligation; and
>
> (ii) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured …

49. Under the Agreement, ProSource received less than $150,000.00, but incurred the obligation to repay Defendant $217,500.00—an obligation that was secured by a security interest (despite those transfers being avoidable in bankruptcy due to Defendant's negligence in filing a financing statement in the wrong state).

50. Based on ProSource's then-recent financial performance, ProSource and Defendant would have expected the $217,500.00 to be repaid in a matter of months, yielding Defendant greater than 94% annual returns.

51. The amount owed under the Agreement was incurred within the two years before the Petition Date.

52. ProSource received less than reasonably equivalent value in exchange for incurring its repayment obligation under the Agreement.

53. ProSource was insolvent on July 30, 2024 or became insolvent as a result of entering into the Agreement.

54. ProSource was, on July 30, 2024 engaged in business or a transaction, or was about to engage in business or a transaction, for which ProSource's remaining property was an unreasonably small capital.

55. On July 30, 2024, ProSource intended to incur, or believed that it would incur, debts that would be beyond ProSource's ability to pay as such debts matured.

56. ProSource's incurrence of its obligation to repay Defendant $217,500 is avoidable as a constructively fraudulent transfer under 11 U.S.C. § 548(a).

57. A proposed order and form of judgment are attached hereto.

WHEREFORE, ProSource prays that the Court (a) enter judgment in favor of ProSource and against Defendant as to the First Claim for Relief declaring the Agreement to be a loan rather than a true sale of accounts and that the Agreement is usurious and invalid; (b) enter judgment in favor of ProSource and against Defendant as to the Second Claim for Relief declaring that Defendant has no secured claim against ProSource; (c) enter judgment in favor of ProSource and against Defendant as to the Third Claim for Relief avoiding the grant of a security interest from ProSource to the Defendant; (d) enter judgment in favor of ProSource and against Defendant as to the Fourth Claim for Relief avoiding all transfers of lien interests to Defendant; and, (c) grant such other and further relief as the Court deems appropriate.

DATED this 20th day of August, 2025.

Respectfully submitted,

WADSWORTH GARBER WARNER CONRARDY, P.C.

/s/ David J. Warner

---

David J. Warner, #38708
2580 West Main Street, Suite 200
Littleton, Colorado 80120
303-296-1999 / 303-296-7600 FAX
dwarner@wgwc-law.com
Attorneys for the Plaintiff/Debtor, ProSource Machinery, LLC

## **CERTIFICATE OF SERVICE**

      I do hereby certify that on the 20th day of August, 2025, I served a true and correct copy of the **VERIFIED MOTION FOR DEFAULT JUDGMENT** via U.S. mail, postage prepaid, to those persons listed below:

Capital Express, Inc.
Steven Berkovitch Esq.
Berkovitch & Bouskila, PLLC
1545 US 202, Ste. 101
Pomona, NY 10970

Capital Express, Inc.
Giuliano Law PC
Anthony Giuliano, Esq.
445 Broadhollow Rd., Suite 25
Melville, NY 11747-3645

Capital Express, Inc.
c/o Yaakov Goder, registered agent
160 Amsterdam Ave.
Passaic, NJ 07055

Capital Express, Inc.
405 Lexington Ave., Ste. 900
New York, NY 10174

                                                */s/ Sydney Schillereff*
                                                Paralegal
                                                for Wadsworth Garber Warner Conrardy, P.C.